Good morning. May it please the court. My name is Victoria Chuggin and I represent Barbara Webber. May I reserve two minutes for rebuttal, please? Sure. The clock counts down and we'll try to help you. Thank you. I'd like to begin by addressing the issue raised in the court's recent notice regarding the effect of Social Security Ruling 16-3P on this case. Now, the district court here rejected Ms. Webber's testimony about emotional lability, specifically that she cried intermittently throughout the day, because she found her testimony generally lacked credibility. That's the administrative law judge, right, not the district court? So the administrative law judge rejected the testimony based on... You said the district court. I want to make sure... Well, now, so I thought this issue perhaps came up because of the way the district court approached this case. I see. Okay. I just wanted to make sure you're... Oh, yes. Okay. I know your experience, but I thought, okay, what am I missing? Now, the commissioner recently issued Social Security Ruling 16-3P back in March of this year, rejecting that very kind of general credibility assessment. And it's true that because it wasn't in effect at the time of the administrative law judge's decision, it would be unfair to hold her to that standard. However, the language of the ruling suggests that this was just a clarification of the commissioner's policy. For example, the ruling begins by stating, the subjective symptom evaluation is not an examination of an individual's character. Instead, we will more closely follow our regulatory language regarding symptom evaluation. The ruling also states, in evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. Well, the Social Security adjudicative process has been non-adversarial for many years. This is not something new. This was a clarification. This rationale that's stated in Social Security Ruling 16-3P is also consistent with a line of cases from this court that emphasizes that there must be specific reasons for rejecting specific testimony. For example... I'm sorry, can I interrupt you? Oh, sure. The language you read that's really the operative language about character, our adjudicators will not assess, and so on, I have clearly in front of me. But I can't find right quickly the language that says we are clarifying. Can you point me to that language? Yes, it's at the very beginning of the ruling. Now, I've got a copy from the Federal Register. It's under Purpose, which is at the very top of the ruling. Okay. One, two, three, four... Oh, I see. We clarify at the end of that first paragraph. In doing so, we clarify. Yes. It's not an examination of individual character. Okay, got it. Thank you. Sure. The two cases that... And these are just two examples, are Greger v. Barnhart and Treichler v. Commissioner of Social Security. These are just two cases from this court that have said that specific reasons need to be provided for rejecting specific testimony. Now, even without addressing the specific issue of the new ruling... Is that really what it's saying? I mean, I saw in doing so we clarify that subjective symptom evaluation is not an examination of an individual's character. Instead, we more closely follow our regulatory language regarding symptom evaluation. I mean, when I read that and then read through this, I was saying in this particular case that it wouldn't seem to me that one should reject the adverse credibility or agree with the adverse credibility finding based on the marijuana use. Well, the marijuana... To challenge even, if you will, the LJ's findings that she couldn't... That she could walk, stand six hours in an eight-hour day. The challenge that she can perform simple, routine, repetitive tasks. And that because nobody even challenges those findings, that one could find her incredible in that her testimony does not equal those findings, if you will. If I understand the question, the issue regarding the marijuana use, our position would be as a very general finding because there is no issue of substance abuse in this case. The administrative law judge did not find that substance abuse was an impairment. She specifically made that point in her decision. The only reason she raised a remote 20-year history of marijuana use was to point out the lack of truthfulness or candor of Ms. Weber. And we would submit that she didn't even do so in connection with her credibility findings. She did so in connection with her rejection of Dr. Widland's opinion. I understand that, but I guess what I'm trying to figure out is what does this ruling, if you will, now cause me to examine in determining her credibility? So under the new ruling, the focus would be linking up specific symptoms with credibility findings. So, for example, I don't think that there are any findings. Since we're not contesting the physical findings, I'm not sure that there's anything in the administrative law judge's decision regarding her testimony about crying periodically throughout the day that would fit under this ruling. So the very fact that you didn't challenge certain ALJ rulings or findings that are contrary to her own testimony about her health and her particular situation, that would not be enough to find a credibility problem? Well, those particular findings that you've cited were specific reasons for rejecting specific testimony. The only general credibility finding that I really see in this case is the one regarding the marijuana abuse and perhaps the statement about the boyfriend, which we do challenge. So what you're basically saying is if we take the regulation at its word, that the ALJ isn't supposed to look at a general condition of credibility, in this case marijuana use, the ALJ did find that there was an impairment that could reasonably lead to the symptoms, but as I understand it, the ALJ said, well, I don't believe that she really is experiencing these symptoms because she has lied about her use of marijuana. So what you would like us to do is say the ALJ, in light of the ruling, is wrong to have rejected credibility on that ground, which is not tied to any particular symptom, and then the crying spells and the inability to work at a production rate, in effect, would have had to have been in the hypothetical pose to the VE, and there was, as I recall, an assumption of that, and the VE testified, well, then she wouldn't be able to be employed. That's correct. The judge did not address the crying specifically and provide any reasons in the record that linked the crying. She didn't reject it for any specific reasons other than the general credibility assessment, and the vocational expert stated that an individual who cried periodically during the workday or needed extra breaks amounting to four hours per month couldn't perform the jobs identified. So that one piece of testimony would be enough to establish disability in this case. Well, I guess I'm again trying to figure out how to make this rule apply, and it's no question that the ALJ's conclusion, it seemed to be underlying this whole appeal that the ALJ's conclusion was Weber was not credible. I mean, the ALJ rejected the lay witnesses and the examining psychologists because they were based on Weber's self-report. The ALJ goes on and suggests that others were not evidence that the ALJ could rely on because they were relying on her self-reporting, which she felt was not credible. So then I was trying to figure out, given this 96.7 ruling, or excuse me, 16.3 ruling, what is it I need to look at now to support this credibility finding? I mean, I have a tough time with the marijuana use based on the fact she smoked daily between 14 and 25 and that she said she has no history. But then she says she smoked two years before 2011. That would give it more credibility in my book. It says it's not quite so far removed. But if I'm to use the new ruling and not really make a decision on her credibility about those kind of things, then I throw it out. Then I said, well, what else is there that's underlying this credibility? Well, it seems to be, and this is me looking at what the ALJ did, and that's why I want you to talk to me about it, that the ALJ found some things that her testimony would not be consistent with, and nobody appeals those. So can I look at that for an underlying basis of the credibility? Well, if you think they're general credibility findings, I would say no. If there's specific reasons for rejecting, say, limitations on walking or standing or ankle pain, all the other types of chronic pain that she alleged, then those would have to be looked at specifically in connection with those impairments. For example, the judge in this case, relating to the mental impairment, talked about how her depression only began a few weeks before the Social Security application was found. That was another aspect of her credibility finding. But that just proved to be untrue. There were plenty of allegations of depression dating back to 2009. But if I, for instance, I'm trying to learn. Weber, at this point, doesn't seem to challenge the findings that she could walk, stand six hours in an eight-hour day. Yet, her assertion is she can't walk more than 10 minutes. Seems to be a dichotomy, which you're going to either believe the medical record, or you're going to believe her. And it seems to be a reasonable basis to say she's not credible, because what she's telling me doesn't meet what's in the medical record, which is what the ALJ has found and what nobody disputes. On the other hand, if we take another one, the ALJ concludes that she can perform simple, routine, repetitive tasks. And she says she has a problem with memory and concentration. Well, that seems to be incongruent. So if the medical record, as the ALJ has found it and nobody challenges, says she can perform simple, routine, repetitive tasks, and she doesn't say that, that seems to be a reason to suggest that she's not credible in what she's saying. I'm just trying to figure out. It doesn't seem to me that the Social Security ruling preempts that analysis. Well, there would be, since it's not an issue before this court, to deduce that a person isn't credible based on issues that haven't been adjudicated would seem inappropriate. There are plenty of examples of the analysis in this case that the judge, that we are challenging, that we can show we're not supported by substantial evidence or that the judge simply got it wrong, cited evidence incorrectly. For example, with respect to the activities of daily living, the administrative law judge just misconstrued the evidence. So based on what is being challenged, if the court were to find that there really were a credibility issue, then it would be appropriate to use that evidence. The next question I have, since I'm having so much struggle with this, had I had a remand just to allow the ALJ to think about this again, given this new ruling? That certainly is an option. We feel that this case has been pending for a long time, and the judge had an opportunity to reject specific testimony, and she did so inappropriately. There is the general credibility finding, certainly, but she also rejected three medical source opinions, and the reasons that she provided for rejecting certain aspects of the testimony are just flat-out wrong. So this court has held in the past that giving ALJs chances to remedy their decisions, even under the prior standard of 96-7P, is not fair to the claimant. Okay, we've taken you slightly over time. Thank you. Let's hear from the government, and then we will give you a chance to respond. Good morning, Your Honor. This is David Burdette, representing the Acting Commissioner, Carolyn Colvin. It pleases the Court. Ms. Chuggin closed by referring to the prior standard. That was what she said, the prior standard of 96-7P, and I think that's revealing. It is a different standard that was in effect at the time. To clarify or not, 16-3P, which came out in March of this year, rescinded 96-7P. There would be no need to rescind if it were not changing and announcing a new standard that the ALJs were to follow beginning in March of 2016. Now, this ALJ delivering this decision in 2012 could not have anticipated that. What you need to hold her to, respectfully, what the Court ought to hold her to, is whether her credibility analysis met the standards that this Court has set out and that 96-7P set out, because that was the regime that she was operating under. What do we do with the problem that's just apparent on the face of the record here that the ALJ made a number of mistakes in supporting her adverse credibility finding, for example, but to choose only one, that she's begun to be depressed only very recently. In other words, this is kind of made up. Well, that's wrong. To take another one, well, she says that she can't or doesn't dress the children. Well, she says she doesn't dress the children because they're not old enough to dress themselves. So, there's some mistakes in there. And what do we do with that? Because I'm not sure that had the ALJ understood the record properly, she would have made the same adverse credibility finding. She might. She might not have. Your Honor, there is at least one mistake, which is the one about the depression. That's correct. As far as the children, I don't know about that. Well, it seems to me that the ALJ says she doesn't dress the children, but earlier she said she did. Well, in her oral testimony, she says, well, they're old enough now, they dress themselves. So, I don't see the inconsistency. Okay, fair enough. If the ALJ points to inconsistencies in the statements, that is or has always been and will be up until we decide to institute a new standard, a valid reason for finding a person not to be credible. Well, I understand that. But what I'm saying is she's given me at least two reasons that turn out to be factually wrong. And I'm just talking human nature now. If somebody tells me, you know, three things and all three of them, it seems to me, are incorrect, I might conclude that she's a liar. On the other hand, if she tells me three things, only one of which is wrong, I might say, well, that was a mistake. So, what do we do with the ALJ who says, well, she lied about this, she lied about that, and she's wrong factually as to both.  The ALJ, she, the ALJ, was certainly right about at least one thing, and I think a couple of things that are very important. Which are? And speaking of that, the marijuana use that you went to, Judge Smith. Now, the case is not about a proposition that because she smoked for X number of years, now she's a liar. That's not what it is. And this fact was blurred even here at Oral Argument, and it was blurred in the briefs, too. It is not about a remote 20-year history of marijuana use. It is about the inconsistent report to two different medical doctors. I go to my doctor and I say, one time, well, do you have any history of drug abuse? Which is a common question in an examination. Yes, when I was 14 to 25, I smoked marijuana, but since then I've been clean. Go to another doctor, do you have any history of drug abuse? Yeah, I was smoking it up until two years ago when I was 45. An inconsistency. An inconsistency on a pretty important thing to talk to your doctor about. I get that, and it really is inconsistent. What troubles me on that one is that that's not what the ALJ used to find her incredible. The only place she discusses this is in discounting Dr. Whitland's evaluation, saying that if he thinks that she was not a drug user, that makes his evaluation suspect. She doesn't say, and I think she doesn't use the inconsistency in marijuana description as a basis for adverse credibility except by inference. I can sort of infer from what she says, from what the ALJ says, that she thinks she's a liar because she's said these inconsistent things. What do I do with that? Well, I think what you do with it, Your Honor, is make that inference, and the court is allowed to make that inference because it's in the administrative decision. Now, if the rule is going to be, Judge Bishop laid out what Ms. Chuggan wants the rule to be. If the rule is going to be that A, B, C, D, E, a person claims five sets of symptoms, whatever they are, and for an ALJ to validly discount them, then A must correspond to A1, a specific remark that I make in that section of the administrative decision. B must correspond to B1, and so on down the line. Then we lose this case. But I'm not sure that's what the regulation needs to be quite so rigid in structure. My understanding is that if, and you were debating with Judge Fletcher as to which it was with respect to marijuana, if the ALJ said, you know, she's generally credible, but I can't find her credible because she misrepresented her marijuana use, okay, would you say that the regulation applies or not? She's not tying it to any symptoms. She says, I don't believe, and therefore I'm not going to put in to my hypothetical the fact that she has this crying problem. I think, if I'm understanding the question correctly, I think, yes, the regulation applies. And I think the regulation has been met in that case. And I think 96-7P was met. And honestly, while we're on the subject, even under the new regime, although I've just said that that was a new regime that's only applying from March of this year forward, 16-3P goes on to talk about inconsistent statements. So, if you want to harmonize it, even today and going forward, we're going to talk about inconsistencies in the claimant's statements. And not general, I beg your pardon. Okay, well, let me clarify my question. The idea, assume that there are no other reasons other than the issue of marijuana usage. Okay, so the LJ found that she had a condition and that could be expected to generate these disabling symptoms if they're intense and persistent enough. That's the fundamental premise of the new regulation, that the ALJ has to go through this two-step procedure. And my understanding is that this regulation in this case would apply to the second, and that is the intensity and persistence. Okay, so if the ALJ was saying, somebody who uses marijuana, I don't believe. So, I'm not going to credit her statement about crime. That's not tied to a symptom, per se. It's just using the use of marijuana as a general reason to deny credibility. Would that be what the regulation is attempting to say ALJs can't do that? No, but this is not that. This is not the use of marijuana, I don't believe them because they use marijuana, I don't believe them about the crime. This is about, I don't believe their credibility generally because they made inconsistent statements about the use of marijuana to the two different doctors, and for a couple of other reasons. You know, I'm having trouble making the inference with any confidence, the inference that you're asking us to draw, that the ALJ disbelieved her because of her inconsistent statements about marijuana. It's one thing to have a record where there is a record of marijuana use and so on, and then in testimony in front of the ALJ she says, no, I never did it. It doesn't come up in front of the ALJ. What we have is, she's going to medical treaters and she's giving inconsistent statements, but it doesn't look as though she's necessarily, I mean, for one she says, listen, I used it very consistently between the ages of whatever it is, 14 and 25, and in another one she says, well, I last smoked it two years ago, and in front of Dr. Whitlam, at least as he recounts to us, no report of drug use. Now, I don't know the question that he asked, so it would be, are you a chronic drug user? And he just says, no report of drug use. But what we have here is that you're using what I think is a set of honest statements to doctors to say that she's a liar when Dr. Whitlam reports that she says, well, I wasn't a marijuana user. I don't know that that makes her a liar so much as an unreliable reporter of her experience. So I'm having a little trouble inferring from this record and from what the ALJ says and doesn't say that the ALJ considers her to be a liar based on these inconsistent things. It's not that she lied in front of the ALJ. It's that she said inconsistent things to the doctors. I understand your point, Your Honor. I would say that whether she's a liar, quote-unquote, or an unreliable reporter is not material, as far as I'm concerned, to the credibility analysis. If she's an unreliable reporter, then she's an unreliable reporter, and the ALJ is entitled to take her reports with a grain of salt. Also, the doctors' reports that are based on her statements to them, which, if they are unreliable, are themselves unreliable. The problem that I have is, and I guess I'm listening to my colleagues as well, so it seems to me this case boils down to whether she's credible or not. Because if she's not credible, then you can eliminate a lot of the people that the ALJ eliminated for relying on her statements, which are, in the ALJ's opinion, incredible. So pretty important that the basis for the credibility be established. If I'm to swallow what Judge Fletcher said, which I'm not sure I'm too far from, that I don't know whether the marijuana use had a whole lot to do with the credibility determination. I think it did as to Whitland, but I'm not sure otherwise. What is the basis? I mean, he presents two particular great issues where the ALJ could be absolutely wrong, and I think is wrong on one, and I think probably is wrong on the other, as he has pointed out. What other basis do we have to make that determination that the ALJ made now? Now, I know what the district court did, and I know that that's just a little bit different than what the ALJ did. And I was presenting, in fact, the district court's rationale to your opponent when she was up here to see if she was going to bite on whether the district court was wrong or not. But if we look at what the ALJ did, what have we got? Well, what we've got, Your Honor, is an administrative decision. It's an administrative decision where the factor that we've been talking about is included in the reasoning full stop. Now, I think it is fair to infer, and maybe it comes down simply, Your Honor, to whether one does or does not think that this inference is fair to draw. But I think it is fair to infer that when the ALJ includes in her reasoning these factors that we've been talking about and says this is why The marijuana use you're talking about? The conflict about the marijuana use. What else? The conflict about her alleged social limitations that she didn't, and yet she has frequent activities with her family and an extensive relationship with her boyfriend that didn't get into Dr. Woodlawn's report. Okay, what else? Her daily activities or her activities in general as evidenced by the note from, and it came up in the doctor's report. So you see these are all interwoven because so much of the evidence in this case deals with what was said to the doctors about her limitations. Almost all of the evidence in the case is taken from what she said to a doctor at one time or another. I go to the doctor and I say these are my limitations. But what I started on this line with was the note that well I was so busy this past weekend. This was one of the notes in 2011. I was so busy this past weekend that I hardly had any time for myself. I was doing all kinds of things for my family. This is in tension with a claim that I am disabled because of social limitations and I can't see anybody because of my depression and anxiety and moderate lethargy, as Dr. Parker put it. All of these things are in tension with the doctor's reports. So I don't think, and hopefully this is helpful, and either it will be or it won't be, but I don't think that we can just separate the doctor's reports from the credibility. It's all of a piece. And if the ALJ gave valid reasons and spelled, and she did spell them out. She spelled them out in the administrative decision. And albeit there was at least one mistake, true, but Batson Case says that all the reasons for credibility analysis don't have to be correct if you've got some good ones. She spelled them out in the decision. It's all linked together. What she said to the doctors, what her credibility is. It all rises or falls together. Okay. Thank you very much. Let's put two minutes on the clock. The government is asking this court to rewrite the administrative law judge's decision. The inference regarding the marijuana use was very important to this case, and it just doesn't make sense to call Ms. Weber a liar based on the omission of a reference in a report when we don't know what was asked. And also what doesn't make sense to me from the beginning is why would she disclose marijuana use so freely to another doctor, to a mental health provider, and then also talk in great detail about much more recent alcohol abuse. Alcohol abuse is what was relevant to this case. A 20-year-old history of marijuana use just didn't seem relevant. It's a 20-year-old history with a statement that I last smoked marijuana two years ago in a 2011 encounter. That one doesn't tell us whether she's a consistent smoker, but it does tell us that she smoked marijuana in 2009. True. Now, we still don't know. What we're doing is we're trying to cobble together. We don't know what the questions were that Dr. Widland asked. Then we're using, without any further questioning at the hearing, we're using two inconsistent statements, even though there are lots of other consistent statements. A woman who says she has memory problems, she's got mental problems, she's depressed. We're picking out a statement made to a doctor that may or may not have been made. There were other remarks in Dr. Widland's report that were, for example, about family that he didn't note in certain parts of his report that he noted in other parts of his report. I feel that we're picking a statement from his report. We're going to turn this entire case and make her into a liar when the inference just doesn't seem reasonable, given her willingness to disclose much more recent and relevant alcohol abuse. Well, and to state it again, I guess my problem in the sense of calling her a liar, the question is whether or not the ALJ had a sufficient basis to conclude that she was not credible. And further, if we correct the ALJ's mistakes and say, now do you still think that she's incredible, I'm not confident what the answer would be. Well, the plaintiff does have the burden of proving disability ultimately, but the administrative law judge has to provide substantial evidence for her findings. And ultimately, at step five, has a burden of showing that there are other jobs in the national economy that the claimant can perform. In this case, based on testimony that was improperly rejected, the vocational expert identified that Ms. Weber couldn't work. So the administrative law judge just didn't meet her burden. Okay. Thank you. Thank both sides for useful arguments. Weber v. Colvin now submitted for decision. The second and last case for this morning, Edgecombe v. Colvin.
judges: W. Fletcher, Fisher, N.R. Smith